UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARVIN TIMOTHY PENNINGTON                                        PLAINTIFF

v.                                        CIVIL ACTION NO. 3:23CV-P132-JHM

COOKIE CREWS *et al.*                                           DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff Marvin Timothy Pennington filed the instant *pro se* prisoner 42 U.S.C. § 1983 action. He filed a complaint (DN 1) and later filed a motion to amend the complaint (DN 7). Upon review, the Court will grant the motion to amend the complaint. *See* Fed. R. Civ. P. 15(a)(1)(B).

The complaint and amended complaint are before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will allow some of Plaintiff's claims to proceed and dismiss other claims.

### I. SUMMARY OF ALLEGATIONS

Plaintiff was a convicted inmate at the Kentucky State Reformatory (KSR) at the time pertinent to the events. In the original complaint, he sues the following Defendants: Cookie Crews, the Commissioner of the Kentucky Department of Corrections (KDOC); Anna Valentine, the Warden of KSR; Phillip Campbell, the Deputy Warden of KSR; and Kim Thompson and Shawn Carmin, unit administrators at KSR. He also lists as a Defendant "Additional Unknown Defendants[,] as they are discovered." In the amended complaint, Plaintiff sues James Holcomb, a Grievance Coordinator at KSR. He sues Defendants in their individual capacities only.

Plaintiff's original complaint sets forth a lengthy statement of facts which the Court attempts to summarize herein.[1] Plaintiff alleges that he suffers from sleep apnea and requires the

---

[1] Plaintiff attaches approximately 180 pages of exhibits to his original and amended complaints. "Neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear

use of a C-PAP machine while sleeping. (DN 1, PageID.8).[2] He reports that KSR was placed on lockdown due to COVID-19 from January 7, 2022, to March 15, 2022. (*Id.*, PageID.10). Plaintiff alleges that Defendants Crews, Valentine, Campbell, Thompson, and Carmin "conspired as a group to achieve 'herd' immunity within Dorm #1 inmates so to become infected with the COVID-19 virus and end the lockdown." (*Id.*, PageID.13). He maintains that he "was deliberately exposed to the COVID-19 virus by the Defendants, when they moved a infected inmate . . . into the cell that the Plaintiff was occupying on February 26, 2022." (*Id.*). He states that prior to the inmate being moved into his cell he had tested negative for COVID-19 on January 12, 2022, February 18, 2022, and February 23, 2022, but that on March 4, 2022, he tested positive. (*Id.*).

Plaintiff states that Defendants Thompson and Carmin failed to follow KDOC policies and procedures and Centers for Disease Control and Prevention (CDC) directives when they moved an inmate who they knew had tested positive for COVID-19 into Plaintiff's cell. (*Id.*, PageID.23-24). He asserts that Defendant Campbell approved the move of the inmate into his cell. (*Id.*, PageID.22). Plaintiff states that KSR records show that the COVID-19 positive inmate was not moved based upon a classification committee decision. (*Id.*, PageID.26). He states, "This was a double secret bed move, with the clear intention to infect the Plaintiff with the dreaded [COVID-19] virus." (*Id.*). Plaintiff maintains that Defendants Crews, Valentine, Campbell, Thompson, and Carmin violated KDOC policies and procedures and CDC directives by knowingly moving a COVID-19 positive inmate into Plaintiff's cell. (*Id.*, PageID.29-32).

---

and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format." *Laster v. Pramstaller*, No. 08-CV-10898, 2008 U.S. Dist. LEXIS 34080, at *4-5 (E.D. Mich. Apr. 25, 2008) (citation omitted). Thus, the Court considers only the allegations in the complaint and amended complaint upon initial review and does not consider the exhibits as asserting additional claims.
[2] Later in the original complaint, Plaintiff states that he is sixty-one years old and, in addition to sleep apnea, has a medical history of blindness, atrial fibrillation, hypertension, diabetes, and other medical issues. (*Id.*, PageID.43).

Plaintiff also maintains that he was denied proper ventilation for his C-PAP machine when he was housed in a cell with a COVID-19 positive inmate. (*Id.*, PageID.34). He states that because of "the inadequate ventilation and the fact that when the Defendants (Valentine, Campbell, Thompson, and Carmin) in concert moved [the COVID-19 positive inmate] into cell #112 with the Plaintiff with his known medical condition" these Defendants "placed the Plaintiff in a situation of close proximity that he would be exposed to the [COVID-19] virus by and thru [the COVID-19 positive inmate's] exhaled breaths." (*Id.*, PageID.37).

Plaintiff further states that he "suffered numerous physical symptoms from becoming infected with the COVID-19 virus." (*Id.*, PageID.41). More specifically, he states as follows:

> The Plaintiff had []tiredness, fatigue, difficulty thinking – "brain fog," headaches, lost of taste, lost of smell, heart palpitations, difficulty breathing, cough, joint and muscle pain, pins – needles feeling in hands – feet, sleep problems, rash, weight loss. The Plaintiff did not receive treatment of any COVID-19 symptoms. As the (KYDOC) medical provider "WellPath" did and does not treat or even discuss symptoms or complications related to the COVID-19 virus. That the Plaintiff suffers long haul symptoms to this day.[3]

(*Id.*).

Plaintiff states that "under the direction of the Defendants – Crews – Valentine – Campbell – Thompson – Carmin determined that a whole dorm move was needed to achieve 'herd' immunity from the dreaded COVID-19 virus so the lockdown could end sooner rather than later." (*Id*, PageID.48). He asserts, "It was stated by a 'WellPath' nursing staff that the Administration wanted to achieve 'herd' immunity as soon as possible by allowing all inmates to get infected/sick. That's why (they) did a dorm bed move on February 26, 2022." (*Id.*, PageID.51). Plaintiff further alleges that Defendant Crews, Valentine, Campbell, Thompson, and Carmin "conspired as a group and

---

[3] Plaintiff does not sue any WellPath employee or medical provider. Therefore, the Court does not construe the complaint as alleging a claim for denial of medical treatment.

3

moved [the COVID-19 positive inmate] into the cell with the Plaintiff without following clearly established [KDOC policies and procedures]." (*Id.*, PageID.57).

Plaintiff alleges that Defendants Crews, Valentine, Campbell, Thompson, and Carmin violated the Eighth Amendment's Cruel and Unusual Punishments Clause and the Fourteenth Amendment's Equal Protection Clause. (*Id.*, PageID.58). He also maintains that Defendants Crews, Valentine, Campbell, Thompson, and Carmin violated his rights under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) "where the Plaintiff as a qualified individual with a recognized disability was denied adequate fresh air ventilation to breath through his C-PAP breathing machine when the Defendants placed a [] positive COVID-19 virus inmate in the Plaintiff's cell." (*Id.*, PageID.59).

Plaintiff further alleges that "since the events described in this complaint, the Plaintiff, a 10 year resident at the (KSR) (and a 10 year inmate legal aide at (KSR)[)] was surprisingly transferred to (EKCC) on June 24, 2022 and then to (LSCC) on November 1st 2022, that being retaliatory conduct." (*Id.*, PageID.64).

As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.61). He also requests to be "housed in a single cell for the pendency of his incarceration" and for the KDOC to "refrain from any more retaliatory conduct." (*Id.*, PageID.65).

In the amended complaint, Plaintiff adds claims against Defendant Holcomb. Plaintiff states that Defendant Holcomb "blatantly failed in his assigned/appointed duties as Grievance Coordinator at the (KSR), when he did not follow the long established grievance procedure . . . ." (DN 7, PageID.232). He maintains that Defendant Holcomb's "actions and inactions on 3/17/2022 denied and interfered with the Plaintiff's ability to have his grievance heard and answered at the institutional level." (*Id.*, PageID.233). He states that Defendant Holcomb determined that his

4

grievance was non-grievable "thusly exceeding the bounds of his job description." (*Id.*, PageID.235).

As relief in the amended complaint, Plaintiff seeks punitive damages from Defendant Holcomb. (*Id.*, PageID.232).

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to

5

be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS

#### *1. Eighth and Fourteenth Amendments*

Upon review, the Court will allow Plaintiff's Eighth Amendment claims for cruel and unusual punishment/deliberate indifference to safety and Fourteenth Amendment claims for violation of the Equal Protection Clause to proceed against Defendants Crews, Valentine, Campbell, Thompson, and Carmin in their individual capacities, including a conspiracy claim. In allowing the claims to proceed, the Court passes no judgment on their merit or ultimate outcome.

#### *2. Violation of KDOC policies and procedures and CDC guidelines*

Plaintiff repeatedly alleges that Defendants violated KDOC policies and procedures and CDC guidelines. Failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation). Moreover, alleged violations of CDC guidelines do not state a federal or constitutional claim under § 1983. *See Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020) ('CDC Guidelines—like other administrative guidance—do not themselves set a constitutional standard."). Therefore, Plaintiff's claims based on violations of KDOC policies and procedures and CDC guidelines must be dismissed for failure to state a claim upon which relief may be granted.

### *3. ADA and RA*

With respect to Plaintiff's claims under the ADA or RA, "there is no individual liability under Title II of the ADA." *Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010); *see also Williams v. McLemore*, 247 F. App'x 1, 5-6 (6th Cir. 2007) (holding that public employees may not be sued in their individual capacity under Title II of the ADA); *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("[N]either the ADA nor the RA impose liability upon individuals."). Only a "public entity" may be sued under the ADA; the term "public entity" includes "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Therefore, Plaintiff's claims under the ADA and RA must be dismissed for failure to state a claim.

### *4. Retaliation*

To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). With regard to the third prong, "retaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Thus, a plaintiff may rely on circumstantial evidence, but he must still provide "specific, nonconclusory allegations" linking his conduct to a defendant's retaliatory act. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108.

"[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff alleges that "since the events described in this complaint, the Plaintiff, a 10 year resident at the (KSR) (and a 10 year inmate legal aide at (KSR)[)] was surprisingly transferred to (EKCC) on June 24, 2022 and then to (LSCC) on November 1st 2022, that being retaliatory conduct." (DN 1, PageID.64). Plaintiff's one-sentence allegation of retaliation is conclusory and sets forth no factual basis to support a retaliatory motive. He does not allege, for example, which, if any, Defendant had the authority to order his transfer to EKCC, much less to order a subsequent transfer from EKCC to LSCC. "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted). Because Plaintiff's allegations of retaliation are conclusory and not supported by facts, these claims will be dismissed for failure to state a claim upon which relief may be granted.

### 5. Grievance handling

Plaintiff alleges Defendant Holcomb failed to follow grievance procedures, "denied and interfered" with Plaintiff's ability to have his grievance heard, and exceeded the bounds of his job description when he determined that Plaintiff's grievance was non-grievable. However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same

8

token, a plaintiff cannot maintain a claim against a prison official based solely on his handling of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."). Therefore, Plaintiff's claim against Defendant Holcomb will be dismissed for failure to state a claim upon which relief may be granted.

### 6. Injunctive relief

Plaintiff's claims for injunctive relief must also be dismissed because he is no longer incarcerated at KSR. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Thus, Plaintiff's claims for injunctive relief will be dismissed for failure to state a claim upon which relief may be granted.

### 7. Unknown Defendants

Plaintiff also sues "Additional Unknown Defendants[,] as they are discovered." The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th

Cir. 2002)). Because Plaintiff states no specific allegations against any unknown Defendant, Plaintiff's claims against "Additional Unknown Defendants" must be dismissed for failure to state a claim. Should Plaintiff identify additional Defendants, he may move to amend the complaint to seek to add claims against them.

### IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that the motion to amend the complaint (DN 7) is **GRANTED**. The Clerk of Court is **DIRECTED** to add James Holcomb as a Defendant in the docket sheet.

**IT IS FURTHER ORDERED** that Plaintiff's claims based on violation of KDOC policies and procedures and CDC guidelines; claims under the ADA and RA; claims for retaliation; claims based on the handling of his grievances; claims for injunctive relief; and claims against "Additional Unknown Defendants" are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court is directed** to terminate Holcomb and "Additional Unknown Defendants" as Defendants in the docket sheet as no claims remain against them.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date: August 17, 2023

*Joseph H. McKinley Jr.*
Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Defendant Crews, Valentine, Campbell, Thompson, and Carmin
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel, as directed above
4414.010