# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:23-CV-00132-JHM-CHL

**MARVIN TIMOTHY PENNINGTON,**  Plaintiff,

v.

**COOKIE CREWS, et al.,**  Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion to Compel Discovery (DN 79), Motion to Object and Respond to the Defendant's "Notice of Certification of Production of Records" (DN 111), Motion to Supplement the Motion to Compel Discovery (DN 124), and Motion to Supplement the Motion to Object (DN 125), all filed by Plaintiff Marvin Timothy Pennington ("Plaintiff")[1]. Defendants Philip Campbell ("Campbell"), Cookie Crews ("Crews"), Kentucky Department of Corrections ("KDOC"), Kim Thompson ("Thompson"), and Anna Valentine ("Valentine") (collectively "Defendants") have filed a response to Plaintiff's Motion to Compel (DN 81) and a response to Plaintiff's Motion to Object. (DN 113.) Plaintiff has filed a reply to Defendants' response brief to his Motion to Compel. (DN 110.) The time to file a reply brief to Defendants' response briefs to Plaintiff's Motion to Object have passed. Accordingly, Plaintiff's Motion to Compel and Motion to Object are ripe for review. Additionally, although Plaintiff's Motions to Supplement are not ripe, they have both been submitted to the undersigned for a memorandum opinion and order. Given that the Court will deny Plaintiff's Supplemental Motions, the Court does not hold that a response or a reply brief will be necessary. For the following reasons, Plaintiff's Motion to

---

[1] Plaintiff's Original Motions (DNs 79, 111) address identical subject matter. The same is true for Plaintiff's Supplemental Motions. (DNs 124, 125.) The Court will thus apply the same analysis to all of them.

Compel is **GRANTED IN PART,** Plaintiff's Motion to Object is **DENIED**, and Plaintiff's Supplemental Motions are **DENIED**.

## I.     Background

Plaintiff is an inmate formerly incarcerated at the Kentucky State Reformatory ("KSR"). (DN 79, at PageID # 1116.)  He alleges that Defendants intentionally exposed him to COVID-19 by moving an inmate infected with COVID-19 into his cell. (DN 71, at PageID # 959.)  Six days after the move, Plaintiff tested positive for COVID-19. (*Id.* at PageID # 964.)

Plaintiff has propounded various discovery requests on Defendants. Plaintiff requested various responses to interrogatories, bed move sheets (or daily recap sheets) for dorms #1 and #3, photographs of the dorms, a transcript of the deposition of Crews, grievances filed concerning COVID-19, and a grievance filed by Plaintiff himself ("Grievance 22-041"). (DN 79.)  Plaintiff is now moving for an order from the Court to compel responses from Defendants. (*Id.*)

## II.    Discussion

### A.    Standard of Review

Matters of discovery are within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).  The reviewing court reviews a ruling by the trial court limiting or denying discovery under an abuse of discretion standard. *Id.*  An abuse of discretion exists when the reviewing court is "firmly convinced" that a mistake has been made. *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994).

### B.    Motion to Compel

The scope of discovery includes any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  A party may request any other party to produce any designated documents or electronically stored information

within the responding party's possession and within the scope of discovery. Fed. R. Civ. P. 34(a)(1)(A). A party may move to compel a discovery response if the other party has failed to produce the requested documents. Fed. R. Civ. P. 37(3)(B)(iv).

Information must be relevant to be discoverable. Fed. R. Civ. P. 26(b)(1). The Supreme Court has interpreted relevance broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on," the claims or defenses of any party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). Essentially, a request for discovery seeks relevant information if there is any possibility that the information sought may be relevant to a claim or defense of any party in the action. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action. *First Mercury Ins. Co. v. Babcock Enters., Inc.*, No. 3:21-CV-00672-GNS-CHL, 2024 WL 3939604, at *7 (W.D. Ky. Aug. 26, 2024). When the discovery material sought appears to be relevant, the party who is resisting production bears the burden of establishing that the material is not relevant, or that it is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure. *Invesco*, 244 F.R.D. at 380. This party bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury. *Id.*

### 1. Outstanding Discovery Responses

Plaintiff originally asserted that Defendants have ignored the interrogatories Plaintiff propounded on them. (DN 79, at PageID # 1113.) However, Plaintiff later explained that he did receive Defendants' answers to his first set of interrogatories. (DN 124, at PageID # 1466.) But Plaintiff claims they are "evasive, misleading, false, collusionist, collaborative in nature," and is

3

thus requesting that each Defendant "supplement/explain/expand" their responses. (*Id.*) Plaintiff further advises the Court that he has given Defendants 30 days to answer. (*Id.*) The Court thus finds that the issue of Defendants' outstanding interrogatory responses is moot at least for the time being.

Plaintiff has also previously asserted that he "has received only one <u>redacted</u> 'Bed Move Sheet-aka-Daily Recap Sheet.'" (DN 79, at PageID # 1114) (emphasis in original.) However, Plaintiff now asserts Defendants provided additional bed move sheets in a redacted form. (DN 124, at PageID # 1466.) Thus, the Court finds that the issue of Defendants' outstanding response to Plaintiff's request for bed move sheets is now moot. However, the issue as to whether the bed move sheets should have been provided in an unredacted form is not moot, and the Court will address that issue below.

Finally, Plaintiff asserts that he has requested "Grievances filed concerning the COVID-19 virus; Grievance 2-041, Southeastern State Corr. Complex, dated 3/28/2024." (DN 79, at PageID # 1117.) Defendants have made several objections to these requests, but nevertheless agreed to produce those grievances to finalize discovery. (DN 81, at PageID # 1179.) The Court will thus order Defendants to produce those grievances.

### 2. Unredacted Bed Move Sheets

Defendants argue that the unredacted bed move sheets are confidential under Kentucky law, and thus may not be disclosed in discovery. (DN 81, at PageID # 1177.) Defendants further argue that disclosure of such information would pose a risk to the safety of the institution because disclosure of "inmate race or racial classifications" may cause stigmatization, racial divisions, and widespread violence and hostility. (*Id.*) The Court disagrees as to both arguments.

Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rules of decision." Fed. R. Evid. 501. Thus, in cases brought in this Court on diversity grounds, state law will generally govern privilege issues. On the other hand, where jurisdiction is grounded exclusively on the existence of a federal question, as it is here, federal privilege law governs. In federal civil rights actions such as this one, most courts have concluded that state law must yield to the federal interest in full disclosure of all facts bearing upon the denial of federally guaranteed rights. *Farley v. Farley*, 952 F. Supp. 1232, 1236 (M.D. Tenn. 1997). But privileges created by state law are not completely irrelevant. *United States v. Gillock*, 445 U.S. 360, 368 n. 8, 100 S. Ct. 1185, 63 L.Ed.2d 454 (1980). The Supreme Court "has taken note of state privilege laws in determining whether to retain them in the federal system." *Id.* As such, courts have been careful not to ignore the policies that underlie state privileges when applying Rule 501 to discovery disputes. *Farley*, 952 F. Supp. at 1236. Principles of federalism and comity dictate that, should a federal court depart from a state law privilege in concluding that discovery may proceed, some deference (and in certain cases a great deal of deference) must be given to the state interests underlying the privilege. *Id.* at 1237.

Here, Defendants cite to section 197.025 of the Kentucky Revised Statutes, prohibiting any person from accessing any records if the disclosure of such records is deemed a threat to the security of the inmate, any other inmate, correctional staff, the institution, or any other person. To be sure, this Court has held that the safety of prisons and jails constitutes good cause to limit discovery. *Shadburne v. Bullitt Cnty., Kentucky*, No. 3:17CV-00130-DJH, 2017 WL 6391483, at *3 (W.D. Ky. Dec. 14, 2017). But parties cannot invoke the safety of prisons and jails as a talisman against discovery. As with all objections to written discovery requests, there must be some

5

demonstration that disclosure will work a clearly defined injury. *Invesco*, 244 F.R.D. at 380. Here, the Court finds none.

Defendants claim that disclosure of the unredacted bed move sheets will pose a risk to the security of the prisons due to the threat of stigmatization, racial divisions, and widespread violence. Defendants have cited two cases to argue that information relating to inmate race or racial classifications is exactly the type of information that should not be disclosed. However, neither of these cases support this argument. In *Johnson v. California*, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005), the Supreme Court applied strict scrutiny to an unwritten policy of the California Department of Corrections that segregated prisoners by race. The Court held that such segregation had the potential to "breed further hostility among prisoners and reinforce racial and ethnic divisions." *Id.* at 507, 125 S.Ct. 1141. In *Brand v. Motley*, 526 F.3d 921 (6th Cir. 2008), the court held that inmates have the right to be free from government-sponsored race discrimination unsupported by a compelling interest. *Id.* at 924. Neither case stands for the proposition that the race of inmates should be kept confidential to protect the safety of the facility. Defendants boldly assert that "[c]ourts routinely held that information relating to inmate race or racial classifications is exactly the type of information that should not be disclosed," yet curiously do not cite to *any* examples. Defendants also assert the unredacted bed move sheets contain information as to the medical treatment provided to an inmate. But the bed move sheet that Plaintiff provided to the Court contains no such information. (DN 79-12.) Accordingly, Defendants have failed to persuade the Court that disclosure of the unredacted bed move sheets will work a clearly defined and very serious injury sufficient to outweigh the probative value of the information. *Invesco*, 244 F.R.D. at 380.

Furthermore, the unredacted bed move sheets are relevant to Plaintiff's claims. Plaintiff's claims depend on his allegation that Defendants moved an inmate infected with COVID-19 into the same cell as Plaintiff. (DN 71, at PageID # 959.) It thus stands to reason that any information bearing on the inmates moved into Plaintiff's cell on the date he was infected would be relevant to his claims. However, Defendants have redacted the names of the prisoners from the bed move sheets, i.e., the most important part of the document along with the locations of the beds. (DN 79-12.) Even if Defendants were correct that inmate racial classifications should not be disclosed, that does not explain why Defendants chose to redact the names of the inmates but not their races. Accordingly, the Court will instruct Defendants to provide all the requested bed move sheets in an unredacted form to Plaintiff.

### 3. Photographs

Defendants are correct that Rule 34 does not require parties to create documents that do not exist. *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16CV-00024-RGJ-RSE, 2019 WL 1261352, at *16 (W.D. Ky. Mar. 19, 2019). Thus, the Court will not compel Defendants to take photographs of the cell Plaintiff was in. Plaintiff is requesting that, in the alternative, the Court "order the Defendant – Kentucky Dept. of Corrections, Cookie Crews – Commissioner issue a memorandum to the Kentucky State Reformatory and the North Point Training Center Administration to: (1) allow the Plaintiff to purchase a disposable camera, and allow such camera to be delivered to the (NTC); (2) that the (KSR) and (NTC) Administration schedule the Plaintiff to be transported from (NTC) to the (KSR) for a day trip, to be able to photograph said Dorm 1, Cell 112, wing and core area; (3) that upon return to the (NTC), the Plaintiff be allowed to mail out said disposable camera, to process and develop [sic] said photographs; (4) thereafter, the Plaintiff be allowed to receive the actual photographs, to be copied

7

to the defendants as reciprocal discovery." However, as this request was raised for the first time in Plaintiff's reply, the Court will not consider it.[2] *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Nor will the Court consider Plaintiff's other solutions, as they were also raised for the first time in Plaintiff's reply. *Id.*

### 4. Deposition Transcript

Plaintiff also argues that "Defendant (Crews) deposition [sic] will help illuminate how Defendant (Crews) as the KDOC Commissioner answered questions about her response to the initial COVID-19 Virus breakout within her Departments [sic] Correctional Institutions. And what measures she had personally taken to avert a COVID-19 Virus out break [sic]." But the deposition in question was taken in an unrelated lawsuit from the year 2020. (DN 79, at PageID # 1117.) None of the Defendants possess the transcript of the deposition, nor is it stored in any records system maintained by KDOC. (DN 81, at PageID # 1179.) Plaintiff has not credibly asserted otherwise. Thus, the Court finds no reason to conclude that, despite Defendants' statements to the contrary, any of them possess the requested transcript. As Rule 34 limits production of documents and tangible things to those within the responding party's "possession, custody, or control," the Court will not order production of the deposition transcript. Fed. R. Civ. P. 34(a)(1).

### 5. Plaintiff's Supplemental Motion

Plaintiff has made a slew of requests in his Motion to Supplement. (DN 124.) For the following reasons, the Court will deny each one.

Plaintiff requests that the Court "order the DOC allow the Plaintiff to purchase a 'disposable camera.' To be delivered to the Little Sandy Corr. Complex. That the DOC, KSR, and LSCC schedule a 'day trip,' for the Plaintiff to be taken (with the camera) to the Kentucky

---

[2] Plaintiff raised this request again in his Motion to Supplement. (DN 124.) For reasons discussed in the section on Plaintiff's Motion to Supplement, the Court will not approve Plaintiff's request.

8

State Reformatory, wherein, the Plaintiff would be allowed to photograph Dorms # 1, and Dorms 3.  Return to LSCC, wherein the Plaintiff would mail out the disposable camera to be developed.  On developed, the LSCC would allow the Plaintiff would allow the Plaintiff to receive the actual photographs."  (DN 124, at PageID # 1467-68) (errors in original.)  Plaintiff does not cite to any authority, nor is the Court aware of any, to support the proposition that a federal court may order a state facility to temporarily release a prisoner, supervised or not, to visit another facility to take photographs.[3]  Thus, the Court will deny Plaintiff's request.

Plaintiff additionally asserts that Defendants "have not provided any grievances filed at KSR related to the COVID-19 Virus from January – March, 2021, as they stated they would provide."  (DN 124, at PageID # 1468) (emphasis in original.)  As Defendants have agreed to produce such grievances, and the Court has already decided to order Defendants to produce such grievances again, the Court finds this repeated request moot.

Finally, Plaintiff asserts he "mailed via USPS, his 'Third Request for Documents' and his 'Second Request for Admissions.'"  (DN 124, at PageID # 1469.)  Plaintiff is accordingly "request[ing] this Court delay ruling on the 'Motion to Compel' [DN 79], for (30) days, to give the Defendants time to answer the new requests."  The Court will not do so.  Plaintiff filed his Motion (DN 79), and the Court will rule on it.  Furthermore, Plaintiff would not benefit from a delay anyway.  Plaintiff requests this delay in case he "[does] not receive[] a response to his 'good faith' effort," so that he may "address that to this Court."  (*Id.*)  If Plaintiff takes issue with Defendants' responses, or lack thereof, to his additional requests, he may bring such issue before

---

[3] Rule 34, as cited by Plaintiff, only permits parties to request "entry onto designated land or other property possessed or controlled by the responding party," and says nothing as to a government facility's obligation to release a pro se prisoner party.

9

the Court in a separate motion. Plaintiff may not use a pending motion as a vehicle to resolve new discovery issues.

As the Court will deny all of Plaintiff's requests in his supplemental motions, the Court finds that Defendants will incur no prejudice in ruling on such supplemental motions before they have filed a response brief.

### 6. Reasonable Expenses

Under Rule 37, if a court grants a Motion to Compel in part, then the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the Motion. Fed. R. Civ. P. 37(a)(5)(C). When parties have taken legitimate positions, and the court grants a motion to compel in part, then courts generally conclude that justice requires that each party be responsible for their own fees and costs. *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 720 (D.N.M. 2017). As the Court has decided to grant Plaintiff's Motion in part, and both parties have advanced reasonable positions, the Court does not believe it is appropriate to award Plaintiff payment for his expenses in prosecuting this Motion.

## III. Order

For the foregoing reasons,

IT IS HEREBY ORDERED that:

(1)     Plaintiff's Motion to Compel (DN 79) is **GRANTED IN PART**. Defendants shall produce the requested COVID-19 grievances again no later than **September 26, 2025**.

(2)     Defendants shall produce all the requested bed move sheets unredacted no later than **September 26, 2025**.

(3) Defendants will not be ordered to produce the requested deposition transcript or the requested photographs.

(4) Defendants will not be compelled to pay Plaintiff's reasonable expenses in prosecuting this motion.

(5) Plaintiff's Motion to object and respond to the Defendant's "Notice of Certification of Production of Records" (DN 111) is **DENIED**.

(6) Plaintiff's Motions to Supplement DN 79 (DN 124) and DN 111 (DN 125) are **DENIED**.

September 10, 2025

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

11