UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00132-JHM-CHL

**MARVIN TIMOTHY PENNINGTON,**　　　　　　　　　　　　　　　　**Plaintiff,**

v.

**COOKIE CREWS, et al.,**　　　　　　　　　　　　　　　　　　　　　**Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions to Deny and to Compel filed by Plaintiff Marvin Timothy Pennington ("Plaintiff"). (DNs 122, 128.) Defendants Cookie Crews ("Crews"), Anna Valentine ("Valentine"), Philip Campbell ("Campbell"), and Kim Thompson ("Thompson") (collectively "Defendants") have not filed a response and the time for doing so has passed. Therefore, the Motions are ripe for review. For the following reasons, Plaintiff's Motions are **GRANTED IN PART**.

**I.     Background**

Plaintiff alleges that Defendants intentionally exposed him to the Coronavirus ("Covid-19") by moving an infected inmate into his cell. (DN 71, at PageID # 964.) Plaintiff is thus suing Defendants under 28 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act. (*Id.* at PageID # 958.) Plaintiff propounded various interrogatories on Defendants, and all of them responded with their answers and objections. (DNs 128-6, 128-7, 128-8, 128-9.) Unsatisfied with their responses, Plaintiff has filed two motions: his Motion to Deny based on his assertion that Defendants' general objections are improper under the Federal Rules of Civil Procedure, and his Motion to Compel based on his request for the Court to order Defendants to provide more specific interrogatory responses. (DNs 122, 128.)

**II.      Discussion**

     **A.      Standard**

Matters of discovery are within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The reviewing court reviews a ruling by the trial court limiting or denying discovery under an abuse of discretion standard. *Id.* An abuse of discretion exists when the reviewing court is "firmly convinced" that a mistake has been made. *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994).

     **B.      Motion to Compel**

Under Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1). Under Rule 33, a party may serve on any other party an interrogatory that may relate to any matter within the scope of discovery. *Id.* 33(a)(2). Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath. *Id.* 33(b)(3). The grounds for objecting to an interrogatory must be stated with specificity. *Id.* 33(b)(4).

After making a good faith attempt to resolve a discovery dispute, a party may move for an order compelling a party to answer an interrogatory that the party has failed to answer. Fed. R. Civ. P. 37(a)(3)(B)(iii). Under Rule 37, an evasive or incomplete disclosure, answer, or response is a failure to disclose, answer, or respond. *Id.* 37(a)(4). This rule prevents parties from reading discovery requests in an "artificially restrictive" manner to avoid disclosing responsive information. *Id.* 37(a) advisory committee's note to 1993 amendment. As such, an evasive or incomplete answer is grounds for an order to compel. *Id.* P. 37(a)(3)(B)(iii).

     **1.      Defendants' general objections have been waived.**

The grounds for objecting to an interrogatory must be stated with specificity, and any ground not stated in a timely objection is waived unless the court excuses the failure for good cause. Fed. R. Civ. P. 33(b)(4). As such, general objections violate the specificity requirements of Rule 33 and are thus considered waived. *NAB Holdings, LLC v. Cloudmybiz*, No. 19-12450, 2020 WL 12738918, at *1 (E.D. Mich. Nov. 20, 2020). Therefore, all of Defendants' general objections are waived. The Court further notes that Defendants have bolstered these general objections with specific objections to *some* of Plaintiff's interrogatories, but none of those objections were for interrogatories that Defendants failed to answer adequately. *See* discussion *infra* Section II.B.2.

### 2. Most of the interrogatories have been answered.

Plaintiff takes issue with most of, though not all, answers given by Defendants. However, the Court finds that most of Plaintiff's interrogatories have been sufficiently answered. For most of those answers, Plaintiff appears to ask each Defendant through his motion for additional information not originally requested in the interrogatory. (DNs 128-11, 128-12, 128-13, 128-14.) This is not a sufficient reason to order a party to revise his or her answers, as Plaintiff must make an additional request for discovery if Plaintiff wants additional information.

Plaintiff has also specifically objected to three responses he had received from Defendants: Valentine's response to interrogatory 22, and Campbell's responses to interrogatories 5 and 17. Interrogatory 22, served on Valentine, asked who approved the bed move on February 26, 2022, where Cody Sailing was moved into the cell with Plaintiff. (DN 128-7, at PageID # 1541.) Valentine answered that she is without sufficient knowledge, recollection, or belief as to any individual who approved the bed move in question. (*Id.*) Plaintiff takes issue with this answer as "evasive, misleading," and "stated to hide the person who approved the bed moves." (DN 128-12,

3

at PageID # 1573.) Plaintiff then again requests the "the name of the person who approved the bed moves." (*Id.*) Although Plaintiff refers to "bed moves," in the plural form, the Court interprets Plaintiff's request to refer to the singular bed move that occurred on the stated date.[1] However, Valentine already told Plaintiff that she did not know or could not recall the individual who approved the bed move. As these interrogatories were directed to individuals instead of institutions, it is entirely plausible that the responding party does not know or remember the answer. By asking the question again, Plaintiff is merely attempting to squeeze blood from a stone. Valentine answered Plaintiff's interrogatory, and the Court will not order her to revise her answer.

Interrogatory 5, served on Campbell, asked him if he or another staff of the KSR approved the bed move in question. (DN 128-8, at PageID # 1548.) Campbell, like Valentine, told Plaintiff he did not recall. (*Id.*) Plaintiff then accuses Campbell of either lying or being derelict in his duties as deputy warden because Campbell oversaw bed moves as part of his responsibilities, and as such, had to have known of such bed moves. (DN 128-13, at PageID # 1575.) Like Valentine, Campbell answered Plaintiff's question; Plaintiff just did not like Campbell's answer. This is not a sufficient reason to order Campbell to revise his interrogatory response. Furthermore, it is not surprising to the Court that Campbell does not recall who approved the bed move in question.[2] Given the breadth of duties that serving as deputy warden entails, it is not surprising that Campbell does not remember such a detail from several years prior.

Interrogatory 17, also served on Campbell, asked who was physically in charge of KSR on February 26, 2022. (DN 128-8, at PageID # 1553.) Campbell objected to this request as vague and ambiguous because the term "physically in charge" is subject to varying interpretations. (*Id.*)

---

[1] To the extent Plaintiff is requesting the name of the individual who approves bed moves generally, such information would have to be requested in a separate discovery request.
[2] Contrary to Plaintiff's assertion, Campbell did not state he did not know; he stated he did not recall.

4

Nevertheless, Campbell answered the interrogatory to the best of his understanding, stating that "it is generally not the case that one specific individual is 'physically in charge' of a KDOC correctional institute such as KSR. My duties as Warden, explained herein, included the general management and oversight of KSR specifically…" (*Id.*) Plaintiff responds by asking for additional information and accusing Campbell of providing an evasive and misleading answer. (DN 128-13, at PageID # 1576.) The Court does not see how Campbell's answer was evasive or misleading; Campbell answered Plaintiff's question completely.

Finding that most of the interrogatories have been sufficiently answered, the Court will turn to those interrogatories that have not been answered sufficiently.

### 3. Interrogatories Served on Crews

Interrogatory 6 asked "[w]hat were your directives to the administration at the Ky. St. Reformatory to combat the spread of the Covid-19 virus infection?" (DN 128-6, at PageID # 1524.) Crews answered, "the response and preventative measures for the Covid-19 pandemic were rapidly evolving and based upon updated guidance, best practices, new scientific understandings, and typically did not come in the form of directives to any specific staff or contractors. Instead. the measures and protocols were outlined in policy, statute, regulations, memoranda, and other department level guidelines and it was the responsibility of the individual institutions and contractors to implement and comply with the measures and related requirements." (*Id.* at PageID # 1524-25.) Plaintiff asks Defendant to clarify what specific measures and protocols were outlined. (DN 128-11, at PageID # 1570.)

Crews's answer is incomplete. Although Crews asserts that the responsive information exists in "policy, statute, regulations, memoranda, and other department level guidelines," Crews declines to share that responsive information with Plaintiff. (DN 128-6, at PageID # 1524.) Just

because the responsive information did not "typically" come in the form of directives does not mean Crews is exempt from answering the interrogatory completely. This is precisely the type of artificially restrictive, hyper-technical reading of discovery requests that Rule 37 was designed to prevent. Fed. R. Civ. P. 37(a) advisory committee's note to 1993 amendment. Additionally, Crews's statement that the responses to the pandemic "were rapidly evolving and based upon updated guidance, best practices, new scientific understandings" does not tell us what those responses were. The Court will thus direct Crews to answer the question completely.

### 4. Interrogatories Served on Valentine

#### a) Interrogatory 12

Interrogatory 12 asked, "[w]hat procedures did you initiate to combat the spread of the Covid-19 virus infection at (KSR) grounds from January, 2022 to March 2022? If you issued any directives, procedures, memos-emails, to any staff at (KSR) produce documents." (DN 128-7, at PageID # 1537.) Valentine answered, "my responsibilities related to any Covid-19 procedures put in place by KDOC were primarily managerial and I only had indirect involvement in overseeing the implementation of said procedures specifically at KSR. Additionally. KDOC procedures for quarantining, sterilization, testing, protective equipment, and a variety of other preventative measures also evolved along with the global scientific understanding of responding to the novel virus." (*Id.* at PageID # 1538.)

The Court finds this answer to be incomplete. Just because Valentine's involvement was indirect and managerial does not mean she would not have responsive information and she provides the Court with no reason to believe she does not. Additionally, saying that the procedures "evolved along with the global scientific understanding of responding to the novel virus" sheds no

6

light on what those procedures were. The Court will thus order Valentine to revise her answer to answer the interrogatory completely.

### b) Interrogatory 13

Interrogatory 13 asked, "[d]id you restrict inmates to their wings cells with bathroom use only?" (DN 128-7, at PageID # 1538.) Valentine answered, "I did not personally 'restrict' any movements or activities of inmates, nor did I directly order any such restrictions, but certain movement restrictions or other emergency protocols were put in place in certain KSR housing areas when necessary or required by KDOC policy and procedure based on evolving best practices." (*Id.*) The Court finds this answer to be evasive and incomplete. Just because Valentine did not personally restrict inmate movements or directly order any such restrictions does not mean she is without knowledge as to what restrictions were put in place in her institution. The fact that Valentine knew that certain restrictions and protocols were put in place and that such protocols were required by KDOC policy and procedure suggests she has responsive information as well. Thus, the Court will order her to answer interrogatory 13 completely.

### c) Interrogatory 21

Interrogatory 21 asked Valentine to "[s]tate the procedure or policy in effect from January 7, 2022 to March 17, 2022. to move an inmate from an assigned bed/cell to another bed/cell." (DN 128-7, at PageID # 1541) (emphasis in original). Valentine responded, "the policies procedures [*sic*] for bed moves depended on several factors and were overseen by the designated supervisor or administrator based on administrative, security, programming, capacity, and other institutional needs and are facilitated in different ways by multiple staff members." (*Id.*) This is not a responsive answer. Plaintiff asked Valentine to state the effective policies or procedures regarding bed moves, not what those policies or procedures depended on or who they were overseen by. The

7

Court will thus order Valentine to revise her answer to completely answer Plaintiff's interrogatory. If Valentine is without sufficient knowledge to answer Plaintiff's question, she should state so.

### 5. Interrogatories Served on Campbell

#### a) Interrogatory 12

Interrogatory 12 asked Campbell what procedures he initiated to "combat the spread of the Covid-19 virus infection at (KSR) grounds from January, 2022 to March 2022?" (DN 128-8, at PageID # 1551.) Campbell answered that his responsibilities related to any Covid-19 procedures put in place by KDOC "were primarily managerial," and that he "only had indirect involvement in overseeing the implementation of said procedures specifically at KSR." This answer is incomplete in the same way that Valentine's response to interrogatory 12 is incomplete. The Court will thus order Campbell to revise his answer to interrogatory 12. If he is without sufficient knowledge to answer the interrogatory, he should state so.

#### b) Interrogatory 13

Interrogatory 13 asked Campbell if he restricted inmates to their cells with bathroom use only. (DN 128-8, at PageID # 1551.) Campbell states he did not "personally" restrict any movements or activities of inmates, nor did he "directly" order any such restrictions. (*Id.*) But Campbell does state that certain movement restrictions or emergency protocols were imposed in certain housing areas. (*Id.*) If Campbell has sufficient knowledge as to what these restrictions and protocols were, and if they indeed restricted inmates to their cells with bathroom use only, Campbell should say so. Campbell's statement that he did not personally impose any restrictions or directly order the same comes from a hyper-technical reading of Plaintiff's interrogatory that only serves to avoid answering it. If Campbell truly was not involved in these restrictions at all,

he should say so. If Campbell was involved in any way, and had responsive knowledge, he should also say so. The Court will therefore order Campbell to revise his response.

### 6. Interrogatories Served on Thompson

Interrogatory 8 asked Thompson what procedures she operated under to combat the spread of Covid-19 from January of 2022 to March of 2022. (DN 128-9, at PageID # 1561.) Thompson answered that "[a]ny procedures, policies, or other requirements relevant to this [i]nterrogatory, promulgated by KDOC without my knowledge or involvement, speak for themselves and no further response is required." (*Id.*) The Court advises Thompson that such procedures, policies, or requirements do not, in fact, speak for themselves. The existence of a document does not foreclose the responsibility of answering an interrogatory. The Court will thus order Thompson to provide Plaintiff with a real answer to his interrogatory.

### 7. Reasonable Expenses

Under Rule 37, if a court grants a motion to compel in part, then the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). Here, the Court does not find that Defendants should bear Plaintiff's expenses in prosecuting this motion. Plaintiff did not request that the Court assess fees against Defendants, and thus, Defendants did not have an opportunity to be heard before having fees assessed against them. Fed. R. Civ. P. 37(a)(5)(C). Therefore, the Court will order Plaintiff to bear his own expenses relating to this motion.

## III. Order

Accordingly,

IT IS HEREBY ORDERED that the Motions to Deny and to Compel filed by Plaintiff Marvin Timothy Pennington ("Plaintiff") are **GRANTED IN PART**. (DNs 122, 128.) No later

than **February 13, 2026**, Defendants shall revise their interrogatory responses in accordance with this Order.

February 2, 2026

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record