**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**MARVIN TIMOTHY PENNINGTON** **PLAINTIFF**

**v.** **CIVIL ACTION NO: 3:23-00132-JHM-CHL**

**COOKIE CREWS, *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion by Defendants Cookie Crews, Anna Valentine, Philip Campbell, Kim Thompson, and the Kentucky Department of Corrections ("KDOC") for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DN 162). Plaintiff Marvin Timothy Pennington filed a response. (DN 180). Defendant filed a reply. (DN 181). Accordingly, this matter is fully briefed and stands ripe for decision.

**I.**

At all times relevant to the adjudication of this motion, Plaintiff was a convicted and incarcerated prisoner housed at the Kentucky State Reformatory ("KSR"). (DN 72, PageID #: 1081). Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional and civil rights during his incarceration at KSR. (DN 1). Plaintiff filed multiple complaints with the Third Amended Complaint being the operative complaint. (DNs 1, 18, 19, 71). The Court reviewed the complaints pursuant to 28 U.S.C. § 1915A and allowed the following claims to proceed: (1) an Eighth Amendment claim for cruel and unusual punishment/deliberate indifference to safety against Defendants Crews, Valentine, Campbell, and Thompson in their individual capacities; (2) a civil conspiracy claim against Defendants Crews, Valentine, Campbell, and Thompson in their individual capacities; (3) a claim under Title II of the Americans with Disabilities Act ("ADA") against Defendant KDOC; and (4) a claim under Section 504 of the

Rehabilitation Act ("RA") against Defendant KDOC. (*Id.*). Defendants deny each claim of liability asserted against them.

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the

summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## III.

### *A. Plaintiff's Allegations*

Plaintiff alleges that, at the time of the events relevant to his action, he was sixty-two years old and suffered from severe obstructive sleep apnea requiring nightly use of a CPAP machine, Type II diabetes, hypertension, paroxysmal atrial fibrillation, respiratory and circulation conditions, and other medical problems. (DN 71, PageID #: 959).

Plaintiff alleges that KSR entered lockdown on January 7, 2022, and that he was confined alone in Dorm 1, A-Wing, Cell 112 which allegedly lacked adequate ventilation. (*Id.*, PageID #: 962). Plaintiff maintains that he tested negative for COVID-19 on January 12, February 18, and February 23, 2022. (*Id.*). He alleges that Defendants conducted a selective Dorm 1 bed move on February 26, 2022, during which they moved inmate Cody Sailing from Dorm 1, C-Wing, Cell 213 into Plaintiff's cell in order to achieve herd immunity for KSR. (*Id.*, PageID #: 962-63). Plaintiff maintains that Sailing was COVID-positive and symptomatic, while Plaintiff remained COVID-negative when the move occurred. (*Id.*, PageID #: 962-63, 967). Plaintiff maintains that

Sailing had been housed alone, that no inmate filled Sailing's vacated bed, and that no legitimate reason supported the transfer. (*Id.*, PageID #: 963).

Plaintiff alleges that he developed a fever, a persistent cough, headaches, heart palpitations, loss of taste and smell, shaking, and muscle and joint pain within twenty-four hours after Sailing entered his cell. (*Id.*, PageID #: 963). Plaintiff maintains that he notified Campbell on February 27, 2022, that a COVID-positive inmate had been moved into his cell, requested a bed move, and explained that he depended on a CPAP machine. (*Id.*). Plaintiff alleges that he tested positive for COVID-19 on March 2, 2022, six days after Sailing entered his cell. (*Id.*, PageID #: 964). Plaintiff further alleges that the infection prevented him from using his CPAP machine, aggravated his sleep-apnea and cardiac symptoms, and caused continuing symptoms that he characterizes as long COVID. (*Id.*, PageID #: 963-64). He asserts that he later developed a first-degree atrioventricular heart block, a condition he allegedly did not have before contracting COVID-19. (*Id.*, PageID #: 959, 964).

Plaintiff contends that Defendants knew COVID-positive inmates should be medically isolated from COVID-negative inmates because KDOC had adopted COVID-19 initiatives, infectious-disease procedures, and testing-based containment measures. (*Id*, PageID #: 960-62). Plaintiff alleges that Valentine and Campbell controlled KSR inmate movements and knew which inmates had tested positive or negative before the February 26 bed move. (*Id.*, PageID #: 965-66). Plaintiff alleges that moving Sailing and forty-two other inmates was part of a coordinated effort to expose negative inmates to COVID-19, achieve herd immunity, and end the lockdown. (*Id.*, PageID #: 962, 967-68). He contends that the February 26 bed move continued a pattern of moving inmates during prior KSR COVID-19 quarantines and constituted a conspiracy among Crews, Valentine, Campbell, and Thompson. (*Id.*, PageID #: 965-68, 985-87).

Plaintiff also alleges that Cell 112 lacked adequate fresh air and return air ventilation for safe use of his CPAP machine. (*Id.*, PageID #: 977-80). He maintains that he informed Thompson about the ventilation problem before the January 2022 lockdown and requested transfer to housing with adequate ventilation. (*Id.*, PageID #: 979-80). Plaintiff further alleges that KDOC denied him adequate ventilation and the ability to use his CPAP machine safely because of his disability and that placing Sailing in the cell forced his CPAP machine to draw allegedly contaminated air. (*Id.*, PageID #: 977-84). Plaintiff contends that this conduct violated Title II of the ADA and Section 504 of the RA. (*Id.*, PageID #: 977-88). Plaintiff further maintains that Defendants' alleged exposure of him to a known infectious-disease risk constituted cruel and unusual punishment and deliberate indifference to his health and safety. (*Id.*, PageID #: 959-68).

***B. Defendant's Motion for Summary Judgment***

Defendants first argue that Plaintiff cannot establish the personal involvement necessary to impose individual liability under 42 U.S.C. § 1983. (DN 162-1, PageID #: 1800-01). They maintain that Plaintiff produced no evidence that Crews, Valentine, Campbell, or Thompson personally decided to move Sailing, directed the move, or knew of it before it occurred. (*Id.*, PageID #: 1801). Defendants contend that supervisory authority, participation in the grievance process, and a failure to remedy an alleged violation are insufficient to establish personal liability. (*Id.*, PageID #: 1800-01).

Defendants next argue that Plaintiff cannot prove either component of an Eighth Amendment deliberate-indifference claim. (*Id.*, PageID #: 1801-04). As to the objective component, Defendants maintain that exposure to COVID-19 does not establish deliberate indifference where correctional officials take reasonable measures to mitigate the danger. (*Id.*, PageID #: 1802). They rely on measures that KDOC and KSR allegedly implemented,

including masking mandates, staff and inmate testing, social distancing, hand sanitizer, entrance sanitizers, separation of positive and negative inmates, a ten-day quarantine for positive inmates, and wastewater testing. (*Id.*; DN 162-2, PageID #: 1810-11). Defendants contend that these measures were reasonable and preclude a finding that the conditions at KSR denied Plaintiff the minimal civilized measure of life's necessities. (*Id.*, PageID #: 1802). As to the subjective component, Defendants argue that no evidence shows that any individual Defendant knew Sailing was positive, knowingly exposed Plaintiff to a substantial risk, or failed to take reasonable steps to abate a known risk. (*Id.*, PageID #: 1803-04). They characterize Plaintiff's herd immunity theory as conclusory and unsupported by the record. (*Id.*, PageID #: 1803-04).

Defendants further argue that Plaintiff cannot establish a civil conspiracy because he identifies no evidence of a single plan, shared objective, or agreement among Defendants to expose him to COVID-19. (*Id.*, PageID #: 1804). They maintain that speculation about herd immunity does not create a genuine dispute of material fact. (*Id.*). Defendants also argue that Plaintiff cannot establish an ADA or RA claim because he does not identify any prison service, program, or activity from which KDOC excluded him because of his disability. (*Id.*, PageID #: 1804-05). They contend that Plaintiff's allegations speak to housing conditions and infection risk rather than disability discrimination under the ADA or RA. (*Id.*). Defendants rely on Thompson's response to Grievance No. 21-1000, which provides that Thompson asked maintenance to inspect the ductwork and airflow, that the institution had a schedule for cleaning ducts and vents, and that maintenance found the ventilation adequate. (*Id.*, PageID #: 1805; DN 7-8, PageID #: 287).

Finally, Defendants argue that Crews, Valentine, Campbell, and Thompson are entitled to qualified immunity because the record does not establish a constitutional violation or the violation of a clearly established right. (*Id.*, PageID #: 1805-07). They maintain that no clearly established

law placed reasonable prison officials on notice that routine housing decisions during the rapidly evolving COVID-19 emergency violated the Eighth Amendment. (*Id.*, PageID #: 1806-07). Defendants therefore request summary judgment on all remaining claims. (*Id.*, PageID #: 1807).

***C. Plaintiff's Response***

Plaintiff responds that genuine disputes of material fact exist concerning Defendants' participation in the bed move, their knowledge of the risk, their purpose in conducting the move, the adequacy of his cell's ventilation, and whether they violated clearly established law. (DN 180, PageID #: 1995-98). Plaintiff maintains that he was COVID-negative before the February 26, 2022, move, that Sailing was COVID-positive, that Defendants placed Sailing in his cell, and that Plaintiff became symptomatic and tested positive shortly thereafter. (*Id.*, PageID #: 1995-97; DN 180-1, PageID #: 2002, 2009-11). He contends that those circumstances permit a jury to find that the move exposed him to a substantial risk of serious harm. (DN 180-1, PageID #: 2002-05, 2009-11).

Plaintiff relies on Defendants' interrogatory responses, institutional records, emails, bed-assignment records, and affidavits to argue that Defendants controlled or participated in inmate moves during COVID-19 lockdowns. (DN 180-1, PageID #: 2011-25). Plaintiff maintains that Crews received COVID-19 information and participated in institutional response meetings; that Valentine and Campbell conferred about the COVID-19 response and ordered moves; and that Thompson, as unit administrator, participated in or acquiesced in moves within her unit. (*Id.*, PageID #: 2012-25). Plaintiff further relies on KDOC's supplemental discovery response which acknowledged that Campbell approved Sailing's move. (*Id.*, PageID #: 2018-20). He argues that this evidence contradicts Defendants' original assertion that none of them were involved and creates a credibility issue for a jury. (*Id.*).

With regard to the Eighth Amendment claim, Plaintiff emphasizes that Defendants knew COVID-19 was highly contagious and had received CDC guidance calling for medical isolation of confirmed cases and efforts to quarantine close contacts individually. (*Id.*, PageID #: 2012-15). He also relies on KDOC materials providing that confirmed COVID-19 patients would be medically isolated from the general population. (*Id.*, PageID #: 2013-15). Plaintiff maintains that this evidence shows Defendants knew the danger of mixing positive and negative inmates but nevertheless approved a move that placed Sailing in Plaintiff's cell three days after Sailing's positive test. (*Id.*, PageID #: 2015-17, 2025-30). He argues that Defendants' general mitigation measures do not resolve whether the specific move at issue was reasonable. (*Id.*, PageID #: 2025-30).

Plaintiff supports his conspiracy claim with emails and affidavits that, in his view, show a pattern of moving inmates during COVID-19 lockdowns to spread infection and end quarantines through herd immunity. (*Id.*, PageID #: 2037-40). He maintains that the February 26 move lacked a penological purpose because no inmate replaced Sailing in the bed he vacated. (*Id.*, PageID #: 2009-11). Plaintiff argues that the coordinated institutional response, the allegedly purposeless moves, and statements attributed to correctional or medical staff permit an inference of an agreement or shared objective. (*Id.*, PageID #: 2037-40).

As to the ADA and RA claims, Plaintiff argues that he is a qualified individual with a disability because he uses a CPAP machine and that adequate fresh air was a service KDOC denied him because of his disability. (*Id.*, PageID #: 2040-46). He maintains that Campbell and Thompson knew the ventilation in his cell was inadequate, that the cell lacked sufficient fresh air for safe CPAP use, and that placing a COVID-positive inmate in the cell compounded the risk. (*Id*, PageID #: 2040-46). Plaintiff disputes Defendants' assertion that maintenance found the

ventilation adequate and relies on grievances and other institutional materials concerning the airflow. (*Id.*).

Plaintiff finally argues that qualified immunity is unavailable because the Eighth Amendment right to reasonable protection from a known infectious-disease risk was clearly established before February 2022. (*Id.*, PageID #: 2002-05). He relies on authority recognizing that prison officials may not ignore conditions that are sure or very likely to cause serious illness and argues that Defendants had fair warning that knowingly placing an infected inmate with an uninfected inmate was unconstitutional. (*Id.*, PageID #: 2002-05). Plaintiff therefore asks the Court to deny Defendants' motion and submit the remaining claims to a jury.

***D. Defendant's Reply***

In reply, Defendants maintain that Plaintiff's response relies on generalized assertions, inadmissible material, and legal conclusions rather than evidence creating a genuine dispute of material fact. (DN 181, PageID #: 2252). Defendants continue to argue that Crews, Valentine, and Thompson had no personal involvement because their names do not appear on Sailing's bed assignment and no evidence shows that they made, directed, or knew about the move beforehand. (*Id.*, PageID #: 2252-53).

Defendants acknowledge in reply that Campbell approved Sailing's move into Plaintiff's cell. (*Id.*, PageID #: 2253-55). They explain that Campbell initially answered discovery incorrectly, later learned from institutional records that he had approved the move, and supplemented his interrogatory response under Civil Rule 26(e). (*Id.*). Defendants contend that Campbell's correction does not show dishonesty and reflects the difficulty of remembering one move among many COVID-related bed moves occurring years earlier. (*Id.*, PageID #: 2254-55).

They further maintain that Campbell did not know Sailing had tested positive when he approved the move. (*Id.*, PageID #: 2255-56, 2260).

Defendants argue that Plaintiff's cited interrogatory responses do not show that Valentine or Campbell knew Sailing's test result because the responses do not identify Sailing or any particular positive inmate. (DN 181, PageID #: 2256). They assert that other interrogatory responses on which Plaintiff relies came from *Johnny Lee Cissell v. Kentucky Department of Corrections*, No. 3:22-cv-00128, and concerned a different inmate and events occurring in 2020. (*Id.*). Defendants also contend that an email chain sent to Valentine and Campbell reported only aggregate testing numbers and did not disclose the identities of inmates who tested positive. (*Id.*). They therefore maintain that Plaintiff cannot establish that any Defendant knowingly exposed him to Sailing's infection. (*Id.*, PageID #: 2255-56).

Defendants challenge Plaintiff's herd-immunity evidence as speculative because the emails and bed-move records do not mention herd immunity. (DN 181, PageID #: 2256-57). They further contend that most inmate affidavits either lack personal knowledge of the reason for Sailing's placement or recount unidentified staff statements offered for their truth and therefore contain inadmissible hearsay. (*Id.*, PageID #: 2257). Defendants acknowledge that Sailing's affidavit reflects personal knowledge of his move but argue that Sailing does not identify why the move occurred. (*Id.*). Defendants maintain that the admissible evidence and KDOC's mitigation measures defeat the Eighth Amendment claim. (*Id.*, PageID #: 2257-58).

Defendants reiterate that the conspiracy claim fails because Campbell is the only Defendant identified on Sailing's bed assignment record and no evidence establishes an agreement to expose Plaintiff to COVID-19. (*Id.*, PageID #: 2258). They likewise maintain that the ADA and RA claims fail because fresh air is not shown to be a prison service, program, or activity and because

Plaintiff does not allege that KDOC denied him ventilation because of his disability. (*Id.*, PageID #: 2258-59). Defendants again rely on Thompson's maintenance request, the routine cleaning schedule, and maintenance's finding that the vents and airflow were adequate. (*Id.*, PageID #: 2259; DN 7-8, PageID #: 287).

Finally, Defendants argue that qualified immunity applies because Crews, Valentine, and Thompson did not participate in Sailing's move and because Campbell lacked knowledge of Sailing's positive test. (DN 181, PageID #: 2259-61). They distinguish precedent recognizing that purposefully commingling infected and uninfected prisoners can violate clearly established law, asserting that the record contains no evidence of purposeful commingling here. (*Id.*, PageID #: 2261). Defendants therefore maintain that the record presents no genuine dispute requiring trial and renew their request for summary judgment on all remaining claims. (*Id.*, PageID #: 2261-62).

## IV.

### *A. Eighth Amendment Cruel and Unusual Punishment*

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511

U.S. 825, 832 (1994) (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, (1981), then quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm or to an inmate's health or safety violates the Eighth Amendment." *Id*. at 828.

The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong. *Id*. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id*. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*. at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

Courts have routinely held that COVID-19 is recognized as sufficiently serious to satisfy the objective prong of the test. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020), *Brown v. Clark*, No. 3:22-cv-21-BJB, 2022 U.S. Dist. LEXIS 144351, at *8 n.2 (W.D. Ky. Aug. 12, 2022); *Saunders v. Macauley*, No. 22-1502, 2022 U.S. App. LEXIS 22177 at *7 (6th Cir. Aug. 10, 2022) (COVID-19 poses a substantial risk of serious harm). Accordingly, the objective prong is met.

Turning to the subjective prong of an Eighth Amendment deliberate-indifference claim, Plaintiff must demonstrate that Defendants subjected him to a substantial risk of harm and failed to take reasonable measures to abate the harm. The Sixth Circuit has held that prison officials are

not deliberately indifferent merely because inmates may be exposed to COVID-19; where correctional officials take reasonable steps to mitigate the risk, the Eighth Amendment is not violated. *See Wilson v. Williams*, 961 F.3d 829, 841-42 (6th Cir. 2020).

Here, the bed assignment for Sailing provides that it was approved by Defendant Campbell. (DN 181-1). There is no evidence in the record that Defendants Crews, Valentine, or Thompson were involved in the placement of Sailing in Plaintiff's cell. Accordingly, the analysis will hinge on Defendant Campbell's actions.

With regard to the knowledge component of the subjective prong, Defendant Campbell avers that "[a]t the time I approved the February 26, 2022 bed move, I did not have knowledge that Inmate Sailing . . . was positive for the Covid-19 virus" and "[h]ad I known Inmate Sailing was positive . . . he would have been placed in housing with other Covid-positive inmates." (DN 181-2).

Plaintiff cites Defendant Campbell's interrogatory response and supplemental response as evidence that he had knowledge of Sailing's covid-positive status. (DNs 180-21; 180-22). However, these responses do not provide evidence that Defendant Campbell had knowledge of Sailing's status with regard to infection with the coronavirus. In fact, Defendant Campbell's original interrogatory response avers that he had no knowledge of Sailing's bed move. Upon supplementation, Defendant Campbell averred that he had signed the bed move order; however, he did not know that Sailing was COVID-positive at the time of the move. Plaintiff also cites an email that Defendant Campbell is copied on in which Defendant Valentine emailed an employee of the KDOC providing stats relating to the total number of tests and COVID-positive inmates at KSR during February 2022. (DN 180-34). However, this suggests an aggregate statistic for the entire prison and does not mention Sailing by name. Accordingly, Plaintiff has failed to show that

Defendant Campbell had knowledge that Sailing was infected when the bed move was approved.

While the lack of evidence pertaining to Campbell's knowledge regarding Sailing's COVID-positive status is enough for Defendant Campbell to carry the day, it should also be noted that Defendants implemented numerous measures to alleviate the risk of COVID-19 to Plaintiff and his fellow inmates including: the wearing of masks by staff and inmates; daily COVID-19 testing for unvaccinated staff; COVID-19 test for inmates twice a week; social distancing; hand sanitizer usage; separation of inmates into COVID-positive and negative groups; a ten day quarantine period for positive inmates; and testing of the waste management system for presence of the virus. (DN 162-2, PageID #: 1809).

Defendants, including Defendant Campbell, took extensive steps to address the risk of COVID-19 to inmates. The Sixth Circuit has held that a reasonable response to the risk of COVID-19 precludes a finding of deliberate indifference even if those measures fall short. *See Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020). In *Wilson*, the defendants asserted the following actions in response to the pandemic:

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id*. at 431.

In this instance, the Defendants' handling of the COVID outbreak was substantially similar to the response of the *Wilson* defendants; accordingly, it cannot be found that Defendants did not

make a reasonable response to the COVID outbreak. Accordingly, Defendants are entitled to summary judgment on this claim.

### *B. Qualified Immunity*

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id*. (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id*. (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

For the reasons set forth above, Plaintiff's Eighth Amendment claim fails at the first step of the qualified immunity analysis, as this Court has found no constitutional violations. However, even if it had not, Plaintiff's claim also fails on the second prong because he cannot show that

Defendants violated clearly established law. The second prong focuses on the state of the law at the time the alleged violation occurred. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). It is not enough to show that the right is established at "'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft*, 563 U.S. at 742). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id*. at 993 (quoting *White*, 580 U.S. at 79). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019). "An official's conduct flunks this 'clearly established' test only if the conduct's unconstitutionality was 'beyond debate' when the official acted, such that any reasonable person would have known that it exceeded constitutional bounds." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021). To determine whether a right is clearly established, a district court within the Sixth Circuit may consider binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point. *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Risbridger v. Connelly*, 275 F.3 565, 569 (6th Cir. 2002)). In this instance, Plaintiff has failed to establish that there was a clearly established law at the time of the alleged constitutional violation that would put an officer on notice that unknowingly allowing an infected prisoner to come in contact with another prisoner is a violation of the law. Accordingly, Defendants Crews, Valentine, Campbell and Thompson are entitled to qualified immunity in this instance.

***C. Civil Conspiracy***

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (internal citations and quotations omitted). To prevail on a civil conspiracy claim, a plaintiff must prove the following elements: "(1) a single plan existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to [the plaintiff]." *Id*. "[A] plaintiff may rely on circumstantial evidence to establish an agreement among the conspirators." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012). However, mere speculation and conjecture are insufficient to establish the existence of an agreement. *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989).

Plaintiff's evidence reflects that Defendants were aware of the risk of COVID-19 generally. Plaintiff contends that despite this knowledge, Defendants still made bed moves with the intent to achieve herd immunity. Nothing that the Plaintiff cites suggests that Defendants had a single plan to achieve herd immunity, or that they purposefully moved an infected inmate into his cell to achieve that alleged plan. Plaintiff cites emails among the Defendants discussing bed moves generally; however, nothing in the emails suggests an agreement amongst the Defendants to achieve herd immunity by purposefully infecting inmates. (DNs 180-50, 180-51, 180-52, and 180-53). Plaintiff's evidence consists of mere speculation and conjecture; accordingly, Plaintiff has not met his burden of proof to show the existence of a civil conspiracy. Accordingly, Defendants are entitled to summary judgment on this claim.

### *D. Americans with Disabilities Act and Rehabilitation Act*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. The Sixth Circuit has recognized two cognizable claims under Title II: (1) intentional discrimination and (2) failure to make a reasonable accommodation. *Keller v. Chippewa Cnty*., 860 F. App'x 381, 385 (6th Cir. 2021); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004).[1]

Under both claims, a Plaintiff must prove that he: (1) is disabled; (2) was "qualified" to take part in the "services, programs, or activities" of the public entity; (3) was "excluded from participation in" or "denied the benefits of" such "services, programs, or activities"; and (4) this exclusion or denial occurred "by reason of" his disability. *See Keller*, 860 F. App'x at 385-86 (quoting 42 U.S.C. § 12132 (internal quotations omitted)).

In terms of intentional discrimination, "to successfully bring an intentional-discrimination claim, a plaintiff must show unfavorable treatment on the basis of his disability. Proof of the defendant's motive is key. After all, the plaintiff must prove that his disability caused the defendant's discriminatory behavior . . . the 'but-for cause' for ADA claims[.] And the defendant must act intentionally" *Finley v. Huss*, 102 F.4th 789, 823 (6th Cir. 2024).

Plaintiff's response provides: "[P]laintiff is <u>Arguing</u> the Ventilation or lack of is a [services] within the (KDOC), and the (KSR). Fresh Air, is a service, for which the Defendant's are required to provide to the Inmates, and the Plaintiff." (DN 180-1, PageID #: 2040, alteration, brackets, and

[1] Section 504 of the RA is analyzed under the same basic framework as a claim under Title II of the ADA only deviating by adding an additional element that the defendant receives federal financial assistance. *See Faris v. CDC & Prevention*, No. 3:22-cv-23-BJB, 2026 LEXIS 80761, at *7 (W.D. Ky. Feb. 24, 2026) (citing *Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 874 (E.D. Mich. 2018).

parentheses in the original). Generally, Plaintiff provides that the lack of ventilation in his cell prevented proper use of his CPAP machine and violates the ADA and the RA. However, it is notable that Plaintiff does not allege that he was denied participation in any prison service, program, or activity because of his respiratory issues. Thus, his claims fall outside of the scope of the ADA and the RA. Accordingly, Plaintiff has failed to meet his burden of proof on this issue, and the Defendants are entitled to summary judgment.

**V.**

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 162) is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: September 28, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, pro se
Counsel of record
4414.016